

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-23-00133-CV

---

IN RE LOGAN BAKER AND JONATHON BAKER, Relators

---

Original Proceeding
96th District Court of Tarrant County, Texas
Trial Court No. 096-327475-21

---

Before Kerr, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

Relators Logan and Jonathon Baker, defendants in an auto-accident personal injury suit, filed this original proceeding to challenge the trial court's order striking their Section 18.001 counteraffidavit. Tex. Civ. Prac. & Rem. Code Ann. § 18.001. Because the trial court's order is contrary to controlling Texas Supreme Court authority, we hold that the trial court abused its discretion by striking the counteraffidavit. But because we also hold that, at this point, the Bakers have not shown that appeal would be an inadequate remedy, we ultimately deny relief.

## I. PROCEDURAL BACKGROUND

Real party in interest, Marcie Pina, Jr., sued the Bakers for personal-injury damages arising from an automobile accident.[1] Pina served the Bakers with billing-record affidavits under Section 18.001 of the Civil Practice and Remedies Code. The Bakers then served Pina with a controverting affidavit, which Pina moved to strike. Pina contended that the counteraffiant, Rhonda Guitreau, was not qualified to provide an opinion on past-expense reasonableness because she is not a certified auditor, had not provided actual medical treatment to patients in over thirty-five years, and did not adequately explain how her billing and coding experience qualified her to determine reasonableness by referencing the Context 4 Healthcare database. Pina also pointed to seven other cases in which a trial court had struck a counteraffidavit by

---

[1]Pina alleged that at the time of the accident, Logan Baker was driving a car owned by Jonathon Baker.

Guitreau "due to her lack of qualifications (and other reasons)." Pina further challenged whether the counteraffidavit complied with Section 18.001(f)'s reasonable-notice requirement.

After a hearing, the trial court signed an order striking the Bakers' counteraffidavit "for all purposes," according to Pina's motion "and [the] arguments contained therein." The Bakers then filed a petition for writ of mandamus in this court seeking relief under *In re Allstate Indemnity Co.*, 622 S.W.3d 870 (Tex. 2021) (orig. proceeding).

## II.  SECTION 18.001 COUNTERAFFIDAVITS

In Texas, a party must prove the reasonableness and necessity of past medical expenses. *In re Chefs' Produce of Hous.*, No. 22-0286, 2023 WL 3027868, at *2 (Tex. Apr. 21, 2023) (orig. proceeding); *Allstate*, 622 S.W.3d at 876. Reasonableness and necessity can be proven via expert testimony or according to Section 18.001's affidavit procedure. *Chefs' Produce*, 2023 WL 3027868, at *2; *Allstate*, 622 S.W.3d at 876. Section 18.001(b) provides that "[u]nless a controverting affidavit is served . . . , an affidavit [of a past bill's reasonableness] at the time and place that the service was provided and that the service was necessary is sufficient evidence[2] to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b). The

---

[2]Although such an affidavit is not conclusive evidence of a past expense's reasonableness and necessity, it is sufficient evidence. *Chefs' Produce*, 2023 WL 3027868, at *2.

3

opposing party may controvert a Section 18.001(b) affidavit by a properly served counteraffidavit, *id.* § 18.001(e)–(g), and also through evidence and argument at trial. *Chefs' Produce*, 2023 WL 3027868, at *2.

According to Section 18.001(f), a proper counteraffidavit "must give reasonable notice of the basis on which the party serving it intends at trial to controvert the claim reflected by the initial affidavit." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(f). It "must [also] be made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit." *Id.* Just as a Section 18.001(b) affidavit "is not evidence of and does not support a finding of the causation element of the cause of action that is the basis for the civil action," a Section 18.001(f) "counteraffidavit may not be used to controvert the causation element of the cause of action that is the basis for the civil action." *Id.* § 18.001(b), (f).

In *Allstate*, the Texas Supreme Court held that mandamus relief was available when a trial court's erroneous order striking a Section 18.001(f) counteraffidavit "(1) allowed the claimant to avoid presenting expert testimony to support a finding of the reasonableness of her medical expenses, (2) excluded the counteraffiant's testimony on any issue, and (3) prohibited Allstate from challenging the reasonableness of the claimant's medical expenses at trial." *Chefs' Produce*, 2023 WL 3027868, at *4–5 (citing *Allstate*, 622 S.W.3d at 883).

## III. ABUSE OF DISCRETION TO STRIKE COUNTERAFFIDAVIT

The Bakers first argue, based on the Texas Supreme Court's analysis in *Allstate*, that the trial court abused its discretion by striking Guitreau's counteraffidavit. An error of law or an erroneous application of the law to the facts is always an abuse of discretion. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 91–92 (Tex. 2019) (orig. proceeding). We will thus review the counteraffidavit in light of *Allstate*'s explanation of the purpose and application of Section 18.001(f).

### A. GUITREAU'S AFFIDAVIT

Guitreau explained in her affidavit that she is a "Certified Medical Billing Specialist and Practice Management Consultant with more than 39 years of experience in the healthcare profession." Guitreau averred that she had reviewed Pina's medical bills "to determine the reasonableness of the charges based on usual, customary, and reasonable fees reported by Context 4 Healthcare's medical cost database."

According to Guitreau, "[o]ver the past 10 years,"[3] she had "reviewed reasonable and customary billing practices, charges, and reimbursement for medical services similar to, and including, the medical services provided in the billing records

---

[3]Guitreau's curriculum vitae attached to her counteraffidavit stated that she had professional experience of "40 plus years in the Healthcare Industry," "20 plus years billing, coding, and collecting medical payments for professional providers," "20 plus years negotiating and implementing medical practice financial policies to include billing and collecting patient payments," and "10 plus years [since December 2010] reviewing and analyzing medical bills for fair and reasonable charges." She also attached a list of 53 Texas trial-court cases in which she had provided deposition testimony as a medical-reimbursement specialist.

[she] reviewed in this case." And she was familiar with "the reasonable and customary billing practices, charges, and reimbursements in the geographic locations where the medical services were provided." She expressly disclaimed "making a determination on whether the[] services [provided to Pina] were medically necessary and/or required."

She explained her experience vis à vis medical billing[4] as follows:

I have advised medical providers regarding procedure charges as well as expected and/or acceptable reimbursement *utilizing usual, customary, and reasonable (UCR) medical cost data*. I have expertise in setting, adjusting, and maintaining provider fee schedules *based on industry-wide authoritative databases*, allowable fees set by commercial insurance companies, government entities and state agencies such as those fees for the type of medical services specifically set forth in the billing records reviewed. *I have extensive experience in physician, facility and patient billing, collections as well as medical bill auditing.* I have reviewed, *analyzed*, and reported *usual, customary, and reasonable medical fees for services rendered by many specialized medical providers.* To date *I have reviewed thousands of medical records and bills* representing hundreds of thousands of individual medical, surgical and pharmacy services. I have testified as an expert witness on charges, payments, and costs for health services.

[Emphasis added.]

Guitreau also limited her affidavit opinion to "the reasonable costs for the provider charges . . . when compared to other providers' charges within the applicable Texas geographic area . . . for the same services rendered." She explained that she based her opinion on "the usual, customary, and reasonable (UCR) method of deciding reasonable and fair amounts for medical services" at a non-negotiated rate or

---

[4]We do not include all of the qualifications experience discussed in the eight-page affidavit.

6

a non-mandated (by rule or statute) rate, "utilizing the UCR database by Context[]4[]Healthcare (C4H)." She then explained what C4H is, how and when it obtains data, and the extent of data it maintains ("over a billion claim charges accounting for approximately 70% of all claims submitted in the US"). According to Guitreau, the data in C4H is "based on actual provider charges."

Guitreau then explained C4H's methodology in detail. In essence, C4H's method involves determining a relative value for a certain charge ("the value of a specific procedure relative to other procedures") and then a conversion factor "meant to represent the effects of geography on prices and . . . calculated at various percentiles." In this way, the database can be utilized to determine a UCR fee "by multiplying a relative value specific to each medical procedure by a conversion factor which is specific to a geographical region, and to a specific percentile." Geographic areas are determined "through a three-digit zip level representing various generally contiguous zip code areas"—320 in all. According to Guitreau, this zip-code methodology "has been generally accepted in the industry and has been used by multiple vendors for decades[,] . . . has been subjected to peer review[,] and has been found to be 'reasonable and consistent with best practices.'"

Guitreau formed her reasonableness opinion by comparing Pina's charges to C4H's "threshold percentage benchmark." According to Guitreau, generally, "[c]harges less than or equal to the threshold percentile value are reasonable; charges more than the threshold value are not reasonable." Guitreau set the threshold

7

percentage benchmark for her review at eighty percent because, according to her, "[t]he 80th and 75th percentiles are the threshold percentiles most used as the maximum reasonable charges in state and federal laws and by major health plans. (Texas Insurance Code §[]1467.083)."[5] Guitreau provided "line-by-line findings on the reasonableness of the charges incurred for the services provided to" Pina.

In addition to explaining C4H and its methodology, and her application of its data, Guitreau provided a detailed explanation of CPT and HCPCS billing codes and determinations.[6]

## B. GUITREAU QUALIFIED TO PROVIDE COUNTERAFFIDAVIT

The Bakers contend that there is no meaningful difference in Guitreau's qualifications and those of the counteraffiant whom the Texas Supreme Court held to be qualified in *Allstate*. Pina, on the other hand, argues that Guitreau's counteraffidavit shows "that she is qualified [only] to identify reimbursement rates in a contract and negotiate out-of-network reimbursement amounts." He relies on the fact that the expert in *Allstate* was a registered nurse, Certified Professional Coder, and Professional Medical Auditor, with over twenty-one years' experience in healthcare,

___

[5]She also noted, "In Texas S.B. 1264, the 2019 legislation protecting patients from balance billing, an arbitration process was established requiring the arbitrator to consider the 80th percentile of billed charges and the 50th percentile of payments in the market when determining appropriate allowable amounts for certain out-of-network care."

[6]CPT stands for current procedural terminology, and HCPCS stands for health care procedure coding system.

whereas Guitreau "had not provided medical services in over thirty-five years, and the bulk of her non-consulting work was founding a pediatric medical facility for low-income children."

But the court's determination in *Allstate* was not based on the nurse counteraffiant's particular direct-medical-treatment background; instead, it was based primarily on her direct experience with medical billing and coding, as well as her "experience using a nationwide database that compiles the amounts charged for the same medical services or devices identified in the initial affidavits through standardized codes used by medical providers across the country." 622 S.W.3d at 877–78. The court discussed in detail and relied on its prior holding in *Gunn v. McCoy*: "that [even] an insurance agent who relies on databases of medical expenses was qualified [in that case] to testify that those expenses were reasonable." *Id.* (citing 554 S.W.3d 645, 673 (Tex. 2018)). Thus, that Guitreau had not directly provided medical services to patients recently and extensively does not distinguish her qualifications from those of the counteraffiant in *Allstate*.

Guitreau explained her ten years' experience in analyzing and comparing reimbursement rates to determine reasonableness, using specialized databases for that purpose. She explained how the C4H database works and demonstrated her familiarity with how to use it, as well as her familiarity with medical billing and coding in general. Pina does not explain how Guitreau's lack of exact certification as the nurse counteraffiant in *Allstate* negates her extensive medical billing and coding

9

experience, including experience in determining reasonableness of fees, as described in the counteraffidavit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(f) (providing that counteraffiant may be qualified "by knowledge, skill, experience, training, education, *or* other expertise" (emphasis added)).

Pina argues that orders from Texas trial courts striking counteraffidavits from Guitreau, while not binding on this court, show that "Texas state courts have also regularly [struck her] affidavits specifically due to her absence of relevant qualifications." He also points to two federal cases in which the courts did the same. *Gonzalez v. Inter Mexicana De Transporte S.A. de C.V.*, No. 5:19-CV-156, 2021 WL 3816338, at *3 (S.D. Tex. July 22, 2021) (order) (finding that defendants failed to show that Guitreau had any "specialized knowledge," any "relevant certifications or accreditations from the American Association of Professional Coders or any equivalent organization," or that she had "any coding or data entry expertise that would make her uniquely qualified to interpret the data from the C4H database"); *Villanueva Carreon v. Gonzales Gamez*, No. 5:19-CV-124, 2021 WL 3604843, at *5–6 (S.D. Tex. Mar. 24, 2021) (order) (finding Guitreau not qualified because she had not sufficiently provided evidence of her coding skills).

We need not consider these holdings, however, because (1) the Texas trial-court orders and one of the federal-court orders predate *Allstate*,[7] (2) none of them

---

[7]The Texas court order dates range from 2013 to 2015; therefore, Guitreaus's experience with comparative medical billing was not yet as lengthy.

rely on *Allstate*, and (3) we do not have copies of Guitreau's counteraffidavits in those cases for comparison purposes. Thus, we do not find the Texas or federal orders persuasive.

Based on the foregoing, we hold that the trial court abused its discretion by finding Guitreau unqualified to provide a Section 18.001(f) counteraffidavit. *See Allstate*, 622 S.W.3d at 877–79.

### C. COUNTERAFFIDAVIT PROVIDES REASONABLE NOTICE

In *Allstate*, the Supreme Court held that "satisfaction of [Section 18.001(f)'s reasonable-notice] requirement does not hinge on the admissibility of the counteraffiant's testimony." *Chefs' Produce*, 2023 WL 3027868, at *3 (citing 622 S.W.3d at 879). "Rather, the trial court must determine whether the counteraffidavit allows the claimant to understand 'the nature and basic issues in controversy and what testimony will be relevant,' such that the claimant has 'sufficient information to enable that party to prepare a defense or a response.'" *Id.* (quoting *Allstate*, 622 S.W.3d at 879).

Pina contended in his motion to strike that Guitreau's affidavit failed to provide sufficient information to attack it because her described method of comparing billing rates in the C4H database does not "provide reasonable notice of the basis supporting her conclusions." According to Pina, Guitreau "failed to disclose why insurance reimbursement rates have a bearing on the maximum amount a provider may reasonably charge" and "also failed to explain why any charge over the

11

80th percentile figure (whether from the [C4H] database, or otherwise) must be deemed an unreasonable charge." He argues that her two attempted citations to law inadequately explain why that law is relevant to the eighty-percent comparator that she identified. In short, Pina argues that even with Guitreau's description of the methodology she used, he still cannot follow how she came up with and utilized that methodology; in other words, he argues that her eighty-percent method is conclusory.

Like the counteraffiant in *Allstate*, Guitreau explained what she did to challenge Pina's past-expense affidavits and how she did it. *See* 622 S.W.3d at 879–80. That the counteraffiant in *Allstate* compared a rate's reasonableness to a median charge rather than eighty percent of a benchmark, as did Guitreau, does not thwart the comparison. Likewise, whether Guitreau's affidavit is conclusory for picking eighty percent as a comparator as opposed to another percentage goes to admissibility, not reasonable notice. *See id.* at 879. Once again, we conclude that Guitreau's counteraffidavit is more like the counteraffidavit in *Allstate* than different enough to justify a different holding. *See id.* at 879–80.

Thus, we conclude that the trial court abused its discretion by determining that Guitreau's affidavit failed to provide reasonable notice.

## IV. THE BAKERS HAVE NOT YET SHOWN APPEAL IS INADEQUATE

Although the Bakers rely on *Allstate* as the touchstone for their abuse-of-discretion argument, their inadequate-remedy argument relies on pre-*Allstate* authority based upon a theory of evidence exclusion that *Allstate* expressly abrogated.

The Bakers cite a pre-*Allstate* Tyler Court of Appeals opinion that relies on a premise first articulated in *Beauchamp v. Hambrick*, 901 S.W.2d 747, 749 (Tex. App.—Eastland 1995, no writ)—that in the absence of a counteraffidavit, Section 18.001 "provides for the *exclusion* of evidence to the contrary, upon proper objection." *In re Brown*, No. 12-18-00295-CV, 2019 WL 1032458, at *2 (Tex. App.—Tyler Mar. 5, 2019, orig. proceeding) (mem. op.) (emphasis added) (quoting *Beauchamp*). *Allstate* expressly disclaimed this part of *Beauchamp*'s holding. *Allstate*, 622 S.W.3d at 882 ("By creating an exclusionary sanction for the failure to satisfy section 18.001(f) that finds no basis in the statutory text, *Beauchamp* and the courts following it have turned this 'purely procedural' statute into a death penalty on the issue of past medical expenses."). Based on this erroneous legal conclusion from *Beauchamp*, the *Brown* court held that the erroneous striking of the counteraffidavit in that case warranted mandamus relief because it (1) harmed the defendant by prohibiting him from "presenting evidence negating the plaintiff's damages" and (2) therefore would "result in an irreversible waste of resources." *Brown*, 2019 WL 1032458, at *6.

The Bakers also cite a pre-*Allstate* dissent from a Dallas Court of Appeals opinion denying mandamus relief for a counteraffidavit-striking order; the dissent explains why in that case—under the *Beauchamp* holding, as followed by the Dallas Court of Appeals in *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 491–92 (Tex. App.—Dallas 2016, pet. denied)—appeal of an erroneous counteraffidavit-striking order would be an inadequate remedy. *In re Parks*, 603 S.W.3d 454, 454 (Tex.

13

App.—Dallas 2020, orig. proceeding) (Schenk, J., dissenting) ("[O]wing to binding prior panel interpretation of this statute, the relator in this case will not be permitted to offer any evidence at trial or otherwise conduct a meaningful defense on the damages issue and will face a mandatory presumption of sufficiency that arises only from the trial court's wholly discretionary decision to admit one affidavit and exclude another.").

The analysis in both *Brown* and the *Parks* dissent depends on the now-abrogated *Beauchamp* holding that an erroneous striking order will prevent the counteraffidavit proponent from introducing his own reasonableness evidence at trial. And even taking that now-abrogated theory as true, other courts of appeals have declined to follow *Brown's* inadequate-remedy analysis. *See In re Liberty Cnty. Mut. Ins.*, 612 S.W.3d 137, 141–42 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding); *In re Savoy*, 607 S.W.3d 120, 128–30 (Tex. App.—Austin 2020, orig. proceeding), *abrogated in part for relying on Beauchamp*, *by Allstate*, 622 S.W.3d at 881–82; *In re Parks*, No. 05-19-00375-CV, 2020 WL 774107, at *2 (Tex. App.—Dallas Feb. 18, 2020, orig. proceeding), *mand. denied for trial court to reconsider ruling in light of Allstate*, 631 S.W.3d 700 (Tex. 2021); *In re Flores*, 597 S.W.3d 533, 537 (Tex. App.—Houston [1st Dist.] 2020, orig. proceeding) (all declining to follow *Brown*).

Here, the trial court did not make any ruling prospectively foreclosing the Bakers' ability to present their own evidence.[8] In fact, the trial court expressed its concern that the defense would spend more money hiring an expert than challenging the claimed difference in medical-bill reasonableness: $36,000 claimed versus $13,000 calculated by Guitreau. Thus, contrary to the Bakers' argument, they would not be foreclosed from challenging at least the factual sufficiency of the reasonableness evidence on appeal. In addition, the trial court put off ruling on the Bakers' motion to strike three of Pina's affidavits as inadequate; therefore, it is possible that not all of the affidavits themselves will be presented at trial.

In *Allstate*, the Texas Supreme Court held that appeal was inadequate—and that mandamus relief was therefore warranted—because the trial court's order allowed the plaintiff "to avoid presenting expert testimony at trial to establish evidence sufficient to support a finding of reasonableness as to her medical expenses" but excluded the counteraffiant's "testimony on any issue" and prohibited Allstate from "offering evidence," "questioning witnesses," or "arguing to the jury" about whether the plaintiff's expenses were reasonable. 622 S.W.3d at 883. We do not have the same situation here. *Cf. In re Cuellar*, 652 S.W.3d 66, 73 (Tex. App.—Dallas 2022, orig.

---

[8]This same type of ruling is at issue in *In re Francisco Gonzalez*, in which this court denied mandamus relief. *In re Gonzalez*, No. 02-22-00051-CV, 2022 WL 576438, at *1 (Tex. App.—Fort Worth Feb. 25, 2022, orig. proceeding [mand. pending]) (mem. op.). Gonzalez filed a mandamus petition with the Texas Supreme Court, which petition remains pending. Petition for Writ of Mandamus at 6–9, In re Francisco Gonzalez, No. 22-0280 (Tex. Apr. 12, 2022) (citing *Brown* and *Parks* in inadequate-remedy part of argument).

15

proceeding [mand. denied]) (Pedersen, J., concurring) (explaining why *Allstate* did not compel mandamus relief when trial court granted Rule 702 motion to exclude expert testimony for lack of reliability and did not foreclose relators from presenting their own trial evidence challenging reasonableness).

In a post-*Allstate* Section 18.001 counteraffidavit case, the Texas Supreme Court has held that appeal was an inadequate remedy to challenge an erroneous counteraffidavit-striking order even when the complained-of order did "not include the wholesale prohibition against challenging the reasonableness of [the plaintiff's] medical expenses at trial." *Chefs' Produce*, 2023 WL 3027868, at *4–5. Appeal was inadequate in that case because, under the applicable Level 3 discovery plan, the extended deadline for designating experts had already passed while the mandamus had been pending; therefore, the trial court's order "effectively foreclose[d Chefs' Produce] from presenting expert testimony at trial on key rebuttal issues, including the reasonableness and necessity of [the plaintiff's] medical expenses." *Id.*

In this case, also governed by Level 3 discovery, the retained-expert-designation deadline passed on May 16, 2023. But the trial court's agreed scheduling order expressly provides for alteration of deadlines (except for trial) by Rule 11 agreement, and the time for discovery completion has not yet closed. Under the agreed scheduling order, jury trial is set for August 14, 2023. The Bakers have not supplemented the mandamus record with any Rule 11 agreements altering the agreed scheduling order, nor have they included in their mandamus record any expert-

16

designation material. Thus, we cannot conclude on this record that the reasoning in *Chefs' Produce* controls here, and—even though we conclude that the trial court abused its discretion—we cannot conclude that the Bakers have shown that appeal would be an inadequate remedy.

## V. CONCLUSION

Having determined that the trial court abused its discretion by striking Guitreau's counteraffidavit but that the Bakers have not shown that they have an inadequate remedy by appeal, we deny the petition for writ of mandamus.

/s/ Brian Walker

Brian Walker
Justice

Delivered: June 8, 2023